KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR3401-L |
| Plaintiff, | Date: May 6, 2008<br>Time: 10:00 a.m. |
| v. | The Honorable M. James Lorenz |
| EDUARDO MARTINEZ-VALDEZ, | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. | |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Motions In Limine in the above-referenced case to (1) Exclude All Witnesses Except The Case Agent; (2) Admit A-File Documents And Testimony; (3) Admit Certificate Of Non-Existence; (4) Admit Audiotape And Transcript Of Deportation Hearing; (5) Admit Expert Testimony; (6) Admit 404(b) Evidence; and (7) Admit 609 Evidence. These motions in limine are based on the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

/ /

/ /

## I

## STATEMENT OF THE CASE

On December 19, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326 (a) and (b). On December 20, 2007, Defendant was arraigned on the Indictment and pled not guilty. On January 3, 2008, Defendant filed a discovery motion and the United States filed its response and motions for discovery. On May 6, 2008, the Court will hear all motions, including motions in limine. The trial is set for May 13, 2008 at 9:00 a.m. As such, the United States files this memorandum of points and authorities in support of the following motions in limine.

## II

## STATEMENT OF FACTS

### A. INSTANT OFFENSE – ILLEGAL REENTRY (FOUND IN)

#### 1. Apprehension and Parole Violation Confirmation

On April 23, 2007, at approximately 11:20 a.m., United States Border Patrol Agents were conducting operations east of Tocayo and south of Interstate 5 near Dairy Mart Road in San Diego, California. Agents encountered Defendant and performed a field interview. Defendant, freely identified himself as "Eduardo Martinez-Valdez," and admitted that he was a citizen and national of Mexico. Defendant also freely admitted that he did not possess documentation that would allow him to legally enter or remain in the United States. Defendant was arrested and transported to a border patrol station for processing.

While processing Defendant, Agents were able to verify that Defendant had a parole hold on him. Consequently, Defendant was turned over to state authorities for a violation of parole under California Penal Code Section 3056.

#### 2. Immigration Check

On April 23, 2007, Border Patrol Agents notified Immigration and Customs Enforcement ("ICE") that Defendant was in custody and that he was being transferred to state authorities due to a parole violation. An immigration detainer was placed on Defendant pending his release from state custody.

/ /

3. **Transfer to ICE Custody**

As discussed below, Defendant served approximately eight months in state custody for the parole violation. On October 10, 2007, Defendant was transferred from state custody to ICE custody. Special Agent Harrison performed a detailed records check on Defendant, which revealed that Defendant is a citizen and national of Mexico, and that Defendant had been previously deported from the United States.

4. **Advice of Rights**

On October 10, 2007, Defendant was advised of his Miranda rights at approximately 10:20 a.m. Defendant elected to invoke his rights.

B. **DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered deported by an immigration judge on January 19, 2005. Defendant was physically removed from the United States pursuant to the deportation order on that same day through the pedestrian lanes at the Nogales, Arizona, Port of Entry.

B. **DEFENDANT'S CRIMINAL HISTORY**

Defendant has an extensive criminal history, and the United States, propounds that Defendant has thirteen criminal history points placing him in Criminal History Category VI. On February 20, 2002, Defendant was convicted of misdemeanor vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 90-days jail and 3 years probation.

On July 11, 2002, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 180-days jail and 4 years probation. On September 30, 2004, Defendant received an additional 8-months custody for violating his probation, relating to his conviction for felony vehicle theft. As such, Defendant received a total sentence of approximately 14-months custody for this conviction.

On February 6, 2003, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 300-days jail and 5 years probation. On January 22, 2004, Defendant was convicted of a felony for carrying a loaded firearm with a prior felony conviction, in violation of California Penal Code §§ 12031(a)(1) and (a)(2)(A), and received a sentence of 2 years in prison. On or about May 8, 2007, Defendant's parole was revoked in the case involving his prior felony conviction for California Penal Code § 12031. The court sentenced Defendant to 8 months in prison. On October 10, 2007, Defendant was released from state prison.

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT

"[A] person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. Fed. R. Evid. 615. Here, the case agent has been critical to the investigation and is considered by the United States to be an integral part of the trial team. Unless the Defendant can make a similar showing as to any of its witnesses, the United States requests that Defendant's testifying witnesses be excluded during trial.

### B. THE COURT SHOULD ADMIT A-FILE DOCUMENTS AND TESTIMONY

The United States intends to offer documents from the Alien Registration File, or "A-File," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security. The documents in the A-File are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his A-File. Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The defendant argued that admission of the A-File documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

The Ninth Circuit has consistently held that documents from a defendant's immigration file are relevant in a § 1326 prosecution to establish the defendant's alienage and prior deportation and admissible under the public records exception to the hearsay rule. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records).

The public records exception is "a firmly rooted exception to the hearsay rule" and the admission of these records into evidence would not violate the Confrontation Clause. Hernandez-Herrera, 273 F.3d at 1217-18 (citing United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995)); see also Crawford v. Washington, 124 S. Ct. 1354, 1367 (2004) (admission of business records would not violate the Confrontation Clause because business records are not "testimonial" in nature). Furthermore, the public records exception is one of the few hearsay exceptions that does not require a foundation. Id. Documents that fall under the public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.'" Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th Cir. 1993) (quoting Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988)). These documents will be certified and self-authenticating under Fed. R. Evid. 902(4).

At trial, a Special Agent with Immigration and Customs Enforcement will be called to testify regarding the immigration documents contained in Defendant's A-File, record-keeping procedures, and the significance of certain documents in the file and such testimony will be based on her personal, on-the-job experience. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); Loyola-Dominguez, 125 F.3d at 1317 (agent "served as the conduit through which the government introduced documents" from A-file).

**C. THE COURT SHOULD ADMIT THE CERTIFICATE OF NON-EXISTENCE**

The Certificate of Non-Existence ("CNR") does not constitute testimonial hearsay evidence prohibited by Crawford v. Washington, 541 U.S. 36 (2004). Rather, it is properly admitted as a self-authenticating, non-testimonial public record. Fed. R. Evid. 803(10), 902(1); United States v. Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005) ("the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court"); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (stating that the documents in a defendant's immigration file are analogous to nontestimonial business records and that "the CNR . . ., reflecting the absence of a record . . ., [does] not fall into the specific categories of testimonial statements referred to in Crawford"). As such, the CNR will be produced to defense counsel as soon as it becomes available to the United States.

**D. THE COURT SHOULD ADMIT THE AUDIOTAPE AND TRANSCRIPT OF DEFENDANT'S DEPORTATION HEARING**

Absent a stipulation, the United States seeks to introduce the portion of the audiotape and transcript of Defendant's removal hearing to establish Defendant's alienage. The audiotape of the removal hearing was certified as genuine and authentic by the United States Immigration Court. The audiotape of the removal hearing is also part of Defendant's official A-File, and, consequently, it is admissible under the public records exception to the hearsay rule. See Fed. R. Evid.803(8)(B); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001).

Transcripts of tape-recorded proceedings may be given to a jury in a criminal trial for the purpose of aiding the jury in following along a tape recording if certain precautions are taken to ensure the accuracy of the transcript. See United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001). Any prejudice arising from the introduction of the transcript can be ameliorated by a limiting instruction emphasizing the jury's role as ultimate fact-finder. See United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996). The parties could stipulate to the portions of the audiotape and prepare a redacted transcript that excludes references to Defendant's prior criminal convictions and any portions that relate to any other aliens at the deportation hearing. Alternatively, to avoid undue delay and the potential for prejudice, the United States proposes that the parties stipulate that Defendant admitted under oath during his removal hearing on January 19, 2005 that: (1) he is not a United States citizen or national, and (2) he is a citizen and national of Mexico.

**E. <u>THE COURT SHOULD ADMIT EXPERT TESTIMONY</u>**

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. <u>United States v. Alonso</u>, 48 F.3d 1536, 1539 (9th Cir. 1995); <u>United States v. Lennick</u>, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

On April 21, 2008, the Assistant United States Attorney and Defense Counsel, Gregory Murphy, agreed to stipulate that the fingerprints taken by Immigration and Customs Enforcement Deportation Officer Gregory Harrison on October 10, 2007, as contained in Defendant's A-File (a copy of which has been produced to Defendant), belongs to Defendant. As such, the United States intends to offer testimony of a fingerprint expert, David Beers, to identify the Defendant as the person who was previously deported. The United States' fingerprint expert will testify that based upon fingerprint comparisons, Defendant was the same person deported on January 19, 2005 and who was found in the United States on April 23, 2007. In addition, the United States' fingerprint expert may testify to establish the foundation for any prior acts or convictions the United States seeks to use at trial. This expert testimony from a trained fingerprint examiner will certainly help the jury resolve questions about the defendant's identity and whether he has illegally re-entered the United States after being previously deported. Expert testimony from a trained fingerprint examiner will certainly help the jury resolve questions about the defendant's identity and whether he has illegally re-entered the United States after being previously deported. Accordingly, the Court should admit the testimony of the United States' fingerprint expert.

/ /

/ /

/ /

**F. <u>THE COURT SHOULD ADMIT 404(b) EVIDENCE</u>**

On March 23, 2004, Defendant was contacted by Immigration and Customs Enforcement Agents in Kern State Prison while he was serving his sentence for being a convicted felon carrying a loaded firearm in 2004, in violation of California Penal Code Section 12031. Upon release from prison, Defendant had a hearing before an immigration judge and was ordered deported on January 19, 2005. The United States contends that this evidence, along with other evidence also provided to Defendant, may be offered by the United States under Federal Rule of Evidence 404(b) to prove knowledge, intent, plan, opportunity and absence of mistake or accident.

Rule 404 is entitled "Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes," and reads as follows:

> (a) **Character Evidence Generally.–**Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> > (1) **Character of Accused.–**Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;
> >
> > (2) **Character of the Alleged Victim.–**Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;
> >
> > (3) **Character of Witness.–**Evidence of the character of a witness, as provided in rules 607, 608, and 609.
>
> (b) **Other Crimes, Wrongs, or Acts.–**Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,[1/] however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404.

---

[1/] It should be noted that the Advisory Committee Notes upon the enactment of the Rule underscored that the use of the word "may" in the rule "is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion, or waste of time." Fed. R. Evid. 404(b), advis. note 1974.

Rule 404(b) thus restates the long-settled rule that evidence of prior or subsequent bad acts or crimes cannot be admitted when the sole relevancy is to show disposition to commit crimes with which the defendant is charged. See generally Michelson v. United States, 335 U.S. 469, 475-76 (1948); United States v. Hernandez-Miranda, 601 F.2d 1104, 1107-08 (9th Cir. 1979). But the Rule, as the Ninth Circuit has noted, is an inclusionary one where "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992); see also United States v. Hinostroza, 297 F.3d 924, 928 (9th Cir. 2002) (quoting United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir. 1991)) ("The only time such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove only criminal disposition.'") (emphasis in original); United States v. Herrell, 588 F.2d 711, 714 (9th Cir. 1978) ("This court has also stated that Rule 404(b) is a rule of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition.") (internal quotations and citations omitted).

On the other hand, when offered to prove something other than propensity–such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident–Rule 404(b) applies to admit the "other act" evidence. See Fed. R. Evid. 404(b); United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998); United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence and the test for admissibility is one of relevance."). In this regard, the Rule is of vital importance, especially in criminal proceedings that typically involve inquiry into the intent of the accused. As the Court stated in United States v. Huddleston, 485 U.S. 681 (1988): "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Id. at 685.

When offered for one or more of the favored purposes enumerated in the Rule, "other act" evidence is proper and becomes admissible if it meets the Ninth Circuit's five-part admissibility test. The "other act" evidence may be admissible if (1) it tends to prove a material point; (2) it is not too

remote in time; (3) it is sufficient to support a finding that defendant committed the other act;[2/] (4) (in certain cases)[3/] the act is similar to the offense charged; and (5) a determination under Rule 403 - whether the probative value is substantially outweighed by the prejudicial impact. See United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000)); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test). Therefore, Rule 404(b) applies to either exclude "other act" evidence (when offered solely as improper conformity evidence), or to permit "other act" evidence (when offered for a proper purpose subject to the Ninth Circuit's five-part test).

The United States contends that the proffered evidence meets the test: (1) the evidence tends to prove a material point–Defendant's knowledge of his whereabouts and intent to enter the United States; (2) it is not too remote in time; (3) it is sufficient to support a finding that defendant committed the other acts; and (4) the acts are similar to the offense charged. Moreover, under Rule 403, this evidence is highly probative and is not substantially outweighed by any prejudicial impact. The evidence should be admitted to prove knowledge, plan, intent, opportunity, and lack of mistake or accident.

**G. THE COURT SHOULD ADMIT 609 EVIDENCE**

The United States intends to use Defendant's prior convictions for impeachment purposes under Rule 609. Specifically, should Defendant testify, the United States intends to inquire about Defendant's felony convictions on (1) July 11, 2002 for violating California Vehicle Code § 10851; (2) February 6, 2003 for violating California Vehicle Code § 10851; and (3) January 22, 2004 for violating California Penal Code § 12031. The United States will also use Defendant's felony convictions should Defendant

---

[2/] In United States v. Huddleston, 485 U.S. 681, 685 (1988), the Supreme Court ruled that a district court need not make a preliminary finding that the offering party proved the specific act evidence by a clear and convincing or preponderance of the evidence standard. Instead, the Court held that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the specific act. See id.

[3/] "When evidence of a prior act is offered to prove knowledge, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the knowledge." United States v. Santa-Cruz, 48 F.3d 1118, 1119 (9th Cir. 1995) (quoting United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993)). When the evidence is offered to show intent, however, the similarity requirement is of utmost importance. See United States v. Adrian, 978 F.2d 486, 492-493 (9th Cir. 1992) (noting the significance of similarity for intent type evidence because "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action").

contend that he had permission to enter the United States or that he did not need permission to enter. If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular his conviction.

Federal Rule of Evidence 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, the five Browne factors weigh heavily in favor of admissibility with regard to all three felony convictions. First, the impeachment value of Defendant's felony convictions is high, as each conviction involves a serious crime. Defendant received a significant sentence for each crime and his disregard for the law casts serious doubt upon his honesty. Second, Defendant's felony convictions occurred in 2002, 2003, and 2004, which is within the ten year period under Rule 609(b).

Third, the prior felony convictions are not similar to the crime charged. Thus, there is no risk that the jury would draw the impermissible conclusion that Defendant committed the charged crime because he previously committed the same crime. Fourth, the importance of Defendant's testimony is crucial in a case such as this. For example, if Defendant contends he had permission to be in the United States, each of his felony convictions would become highly relevant. In addition, if Defendant testifies that he had received, or did not need, permission to enter the United States, he would essentially "open the door" to his criminal history: Defendant's convictions would preclude him from receiving permission to enter the United States. Finally, because such a challenge could only be developed

through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case.

Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing the each of the felony convictions and providing the jury with a limiting instruction. Accordingly, the United States should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609(a) if Defendant elects to testify at trial.

## IV

## CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court grant the United States' motions in limine.

DATED: April 22, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Joseph J.M. Orabona
JOSEPH J.M. ORABONA
Assistant United States Attorney