KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO MARTINEZ-VALDEZ,<br><br>Defendant. | Criminal Case No. 07CR3401-L<br><br>Date: May 6, 2008<br>Time: 10:00 a.m.<br><br>The Honorable M. James Lorenz<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**(1) DISMISS THE INDICTMENT DUE TO AN INVALID DEPORTATION**<br>**(2) DISMISS THE INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTIONS**<br><br>**TOGETHER WITH A STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motion to Dismiss the Indictment Due to an Invalid Deportation. The Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

/ /

/ /

# I

# STATEMENT OF THE CASE

On December 19, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326 (a) and (b). On December 20, 2007, Defendant was arraigned on the Indictment and pled not guilty. On April 22, 2008, Defendant his motion to dismiss the Indictment due to alleged improper grand jury instructions. On May 6, 2008, the Court will hear all motions. The trial is set for May 13, 2008 at 9:00 a.m. The United States files the following response in opposition to Defendant's motions to dismiss due an alleged invalid deportation and due to improper grand jury instructions.

# II

# STATEMENT OF FACTS

## A. INSTANT OFFENSE – ILLEGAL REENTRY (FOUND IN)

### 1. Apprehension and Parole Violation Confirmation

On April 23, 2007, at approximately 11:20 a.m., United States Border Patrol Agents were conducting operations east of Tocayo and south of Interstate 5 near Dairy Mart Road in the Southern District of California. Agents encountered Defendant and performed a field interview. Defendant, freely identified himself as "Eduardo Martinez-Valdez," and admitted that he was a citizen and national of Mexico. Defendant also freely admitted that he did not possess documentation that would allow him to legally enter or remain in the United States. Defendant was arrested and transported to a border patrol station for processing.

While processing Defendant, Agents were able to verify that Defendant had a parole hold on him. Consequently, Defendant was turned over to state authorities for a violation of parole under California Penal Code Section 3056.

### 2. Immigration Check

On April 23, 2007, Border Patrol Agents notified Immigration and Customs Enforcement ("ICE") that Defendant was in custody and that he was being transferred to state authorities due to a parole violation. An immigration detainer was placed on Defendant pending his release from state custody.

**3. <u>Transfer to ICE Custody</u>**

As discussed below, Defendant served approximately eight months in state custody for the parole violation. On October 10, 2007, Defendant was transferred from state custody to ICE custody. Special Agent Harrison performed a detailed records check on Defendant, which revealed that Defendant is a citizen and national of Mexico, and that Defendant had been previously deported from the United States.

**4. <u>Advice of Rights</u>**

On October 10, 2007, Defendant was advised of his <u>Miranda</u> rights at approximately 10:20 a.m. Defendant elected to invoke his rights.

**B. <u>DEFENDANT'S IMMIGRATION HISTORY</u>**

Defendant is a Mexican citizen who was ordered deported by an immigration judge on January 19, 2005. Defendant was physically removed from the United States pursuant to the deportation order on that same day through the pedestrian lanes at the Nogales, Arizona, Port of Entry.

**B. <u>DEFENDANT'S CRIMINAL HISTORY</u>**

Defendant has an extensive criminal history, and the United States, propounds that Defendant has thirteen criminal history points placing him in Criminal History Category VI. On February 20, 2002, Defendant was convicted of misdemeanor vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 90-days jail and 3 years probation.

On July 11, 2002, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 180-days jail and 4 years probation. On September 30, 2004, Defendant received an additional 8-months custody for violating his probation, relating to his conviction for felony vehicle theft. As such, Defendant received a total sentence of approximately 14-months custody for this conviction.

On February 6, 2003, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 300-days jail and 5 years probation. On January 22, 2004, Defendant was convicted of a felony for carrying a loaded firearm with a prior felony conviction, in violation of California Penal Code §§ 12031(a)(1) and (a)(2)(A), and received a sentence of 2 years in prison. On or about May 8, 2007, Defendant's parole was revoked in the case involving his prior felony conviction for California Penal Code § 12031. The court sentenced Defendant to 8 months in prison. On October 10, 2007, Defendant was released from state prison.

**III**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO AN ALLEGED INVALID DEPORTATION**

Defendant's prior deportation did no deprive him of due process. Defendant argues that his 2005 deportation is invalid because the immigration judge provided "inadequate and inaccurate advice regarding his rights," particularly concerning Defendant's eligibility for voluntary departure, and then exercised his discretion in denying voluntary departure because Defendant did not establish the ability to pay for his return to Mexico. [Def. Mot. at 4-5.] To the contrary, the record, taken in its entirety, supports a finding that Defendant was effectively advised of his eligibility to seek a voluntary departure. [See Def. Ex. B at 8-9.] Moreover, even assuming that the immigration judge somehow erred in advising Defendant of his rights, Defendant cannot meet his burden of establishing resulting prejudice. Indeed, the transcript of the deportation hearing reveals that the immigration judge thoroughly considered whether Defendant should obtain voluntary departure and exercised his discretion in concluding that one was not warranted in Defendant's case. There was no error by the immigration judge, and therefore, the deportation was valid. As such, the Court should deny Defendant's motion to dismiss the indictment.

**1. Defendant's Deportation Was Valid**

A defendant charged with illegal reentry after removal under 8 U.S.C. § 1326 may collaterally attack the removal order only under limited circumstances. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). To sustain a collateral attack, a defendant must show the following:

(1) he exhausted all administrative remedies available to him to appeal his removal order;

(2) the underlying removal proceedings at which the order was issued "improperly deprived [him] of the opportunity for judicial review;" and

(3) "the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d) (emphasis added).

The Ninth Circuit has stated that "[a]n underlying removal order is fundamentally unfair if: (1) [an alien's] due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks omitted).

Two sections of the Immigration and Nationality Act ("INA") provide for voluntary departure: sections 240B(a) and 240B(b). Defendant asserts that in 2005, he was eligible for relief under section 240B(a), the fast track voluntary departure provision, and the immigration judge failed to adequately and accurately advise him of such relief.

Section 240B(a) of the INA sets forth the requirements for pre-conclusion voluntary departure, and states, in relevant part:

> The Attorney General **may** permit an alien voluntarily to depart the United States **at the alien's own expense** under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title.

8 U.S.C. § 1229c(a)(1) (emphasis added).

Section 240(b) of the INA sets forth the requirements for post-conclusion voluntary departure, and states, in relevant part:

> The Attorney General **may** permit an alien voluntarily to depart the United States **at the alien's own expense** if, at the conclusion of a proceeding under section 1229a of this title, the immigration judge enters an order granting voluntary departure in lieu of removal and finds that–
>
> > (A) the alien has been physically present in the United States for a period of at least one year preceding the date the notice to appear was served under section 1229a(a) of this title;
> >
> > (B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
> >
> > (C) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title; and
> >
> > (D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

8 U.S.C. § 1229c(b)(1) (emphasis added).

As emphasized in the statutes above: (1) voluntary departure, whether pre-conclusion or post-conclusion, requires that the alien depart at his/her own expense; and (2) voluntary departure relief is discretionary – it is a privilege, not a right. See Kandamar v. Gonzales, 464 F.3d 65 (1st Cir. 2006). The immigration judge decided, after questioning Defendant about his family ties to the United States, giving him an opportunity to postpone the remainder of the hearing to investigation whether a visa petition had been filed on his behalf, and inquiring about his criminal conviction, not to exercise his discretion and grant voluntary departure. [Def. Ex. B at 11-15.]

As discussed in detail below, Defendant's challenge to his deportation fails all three prongs of § 1326(d). Defendant objects to the 2005 deportation. Defendant is not entitled to collaterally attack that removal because he failed to exhaust his administrative remedies. Further, there is no showing that the proceeding improperly deprived him of the opportunity for judicial review. Indeed, the evidence demonstrates that the immigration judge informed Defendant of his opportunity to file an appeal and Defendant responded that he wanted to waive appeal. Finally, Defendant's removal order was not fundamentally unfair because there was no due process violation, and even assuming that there were procedural defects, Defendant cannot show that the defects prejudiced him.

**(a) Defendant Failed to Exhaust His Administrative Remedies**

As a threshold matter, to wage a collateral attack on his removal on any grounds, Defendant must have exhausted his administrative remedies. 8 U.S.C. § 1326(d)(1); United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000). Specifically, pursuit of administrative options is a statutory prerequisite to collateral attack in a 1326 proceeding. See United States v. Estrada-Torres, 179 F.3d 776, 778 n.3 (9th Cir. 1999), overruled on other grounds by United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001) (en banc).

Here, Defendant failed to exhaust his administrative remedies. At his 2005 deportation hearing, Defendant was advised of his right to appeal the removal order, but waived appeal. [See Def. Ex. B at 10-11.] The record reveals that at the start of the deportation hearing, Immigration Judge Sean H. Keenan discussed the proceeding itself, Defendant's possible eligibility for voluntary departure, and the Defendant's right to appeal his decision to a higher court. [See id.] After speaking with Defendant individually and concluding that he was subject to removal, the immigration judge asked Defendant whether he wished to accept his order of removal or appeal it, and Defendant answered "I waive it." [Id. at 11.] The immigration judge followed up by asking Defendant, "You waive appeal?" [Id. at 12.] Defendant replied, "Yes. I waive it." [Id.]

This is a classic case of failure to exhaust known remedies. See United States v. Hinojosa-Perez, 206 F.3d 832, 836 (9th Cir. 2000) (holding that an alien who received notice of his right to file a motion to reopen immigration hearing and who failed to do so did not exhaust his administrative remedies); Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA

constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."). On this ground alone, Defendant's collateral attack on his deportation fails.

Defendant claims exemption from the exhaustion bar because his due process rights were violated when the immigration judge "inadequately and inaccurately" to advise him that he was eligible to seek a pre-conclusion voluntary departure. As shown below, however, the immigration judge not only effectively informed Defendant of his eligibility for such relief, but he went on to consider whether he should actually obtain it – by asking Defendant about his citizenship, whether Defendant could depart the United States at his own expense (as required by section 240B(a)(1)), about his family ties, whether Defendant had a pending visa application, whether he wanted to postpone the hearing so that the Government could investigate the existence of such application, and Defendant's criminal record. After considering all these factors, the immigration judge concluded in the exercise of his discretion that Defendant was <u>not</u> entitled to pre-conclusion voluntary departure.

**(b) <u>Defendant Was Not Denied Judicial Review</u>**

As discussed above, Defendant was informed of the right to appeal the immigration judge's removal order at the beginning of the hearing on January 19, 2005. As noted on the record of the removal hearing, Defendant was given a sheet of paper spelling out in detail his right to appeal, which he acknowledge receiving. [Def. Ex. B. at 11.] The immigration judge explained to Defendant that he may be eligible for voluntary departure, and after considering factors related to Defendant, the immigration judge exercised his discretion and denied Defendant pre-conclusion voluntary departure by ordering Defendant removed. At one point during the hearing, the immigration judge gave Defendant the opportunity to postpone the hearing so that the Government could investigate his claim that his father had filed a visa petition on his behalf – a critical fact that could have impacted Defendant's status. [Def. Ex. B. at 14.] However, Defendant told the immigration that he did not want to postpone the hearing, and the immigration judge asked Defendant whether he understood what he was doing. [ <u>Id.</u>] Defendant replied, "Yes." The immigration judge advised Defendant of the consequences of his decision, and Defendant stated that he accepted the immigration judge's decision and waived his right to appeal the decision. [<u>Id.</u>]

Defendant's attempt to collaterally attack the removal order fails on this ground as well. See § 1326(d) (requiring alien to satisfy all three conditions before he can mount collateral attack on prior deportation order). Only when that avenue of review has been precluded by some procedural defect is a collateral attack permitted. That did not occur here. Defendant's attempt to make an "end-run" around the statutory requirements should be rejected. Thus, Defendant was not denied judicial review of his removal order.

**(c) Defendant's Removal Was Not Fundamentally Unfair**

***(1) There was No Due Process Violation Since Defendant was Given Opportunity to Receive Voluntary Departure***

Defendant claims that the immigration judge's failure to advise Defendant that he was eligible for voluntary departure violated his due process rights. However, the Ninth Circuit has "held that aliens have no fundamental right to discretionary relief from removal [specifically, voluntary departure] for purposes of due process and equal protection." Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1166 (9th Cir. 2004); but see Ubaldo-Figueroa, 364 F.3d at 1050 (holding that it is a due process violation for an immigration judge to fail to inform an alien of his or her ability to apply for relief from removal). Defendant is arguing he has a fundamental right to be advised of relief he has no fundamental right to receive.

Immigration cases reinforce that voluntary departure is a discretionary remedy. The leading Board of Immigration Appeals case on voluntary departure is Matter of Gamboa, 14 I&N Dec. 244 (BIA 1972), in which the Board explained when exercise of discretion may be warranted:

> The mere fact that an alien may be eligible for some form of discretionary relief does not mean that he must be granted that relief; discretion must still be exercised, Hintopoulos v. Shaughnessy, 353 U.S. 72 (1957). In exercising discretion on a voluntary departure application, the special inquiry officer may take into account many factors, including the alien's prior immigration history, the nature of his entry or entries . . . ., his violations of the immigration and other laws, and the like, Matter of M–, 4 I. & N. Dec. 626 (BIA, 1952); Matter of Pimentel, 12 I. & N. Dec. 50 (BIA, 1967); Matter of Wong, Interim Decision No. 1966 (BIA, 1969). Discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs, Matter of S–, 6 I. & N. Dec. 692 (A.G., 1955).

Id., 14 I&N Dec. at 248. It is the alien's burden to establish that his equities warrant a grant of voluntary departure. See Abedini v. INS, 971 F.2d 188, 192-193 (9th Cir. 1992). Even if an alien establishes statutory eligibility, there is no entitlement to voluntary departure because it is a privilege, not a right,

and the decision to grant voluntary departure rests in the discretion of the Attorney General. See Villanueva-Franco v. INS, 802 F.2d 327, 329 (9th Cir. 1986).

Here, no due process violation occurred because Defendant was actually advised of the opportunity for voluntary departure. Without Defendant having to first formally apply for such relief, Immigration Judge Keenan actually considered whether Defendant should obtain a pre-conclusion voluntary departure – and then found in his discretion that such relief was not warranted.

As an initial matter, the transcript of the deportation hearing supports a finding that the immigration judge effectively advised Defendant of the availability of voluntary departure. At the outset, the immigration judge informed Defendant that he would consider whether any relief from deportation was possible for him. Immigration Judge Keenan said: "If you are eligible for voluntary departure, I will ask you if you have the amount of money to pay your own way back to your own country." [Def. Ex. B at 8.] Thereafter, the immigration judge advises Defendant that the cost to travel from Eloy, Arizona to Mexico is approximately seven dollars. Defendant argues that while he does not dispute that the United States does not have to pay his way to Mexico, he does not have to meet this criteria to qualify for pre-conclusion voluntary departure. Defendant's contention fails for two reasons, which are stated in Section A.1 above: (1) voluntary departure, whether pre-conclusion or post-conclusion, requires that "an alien voluntarily depart the United States **at the alien's own expense**..."; and (2) voluntary departure relief is discretionary – it is a privilege, not a right. See Kandamar v. Gonzales, 464 F.3d 65 (1st Cir. 2006). As such, the immigration judge was well within his discretion to inquire as to whether Defendant could voluntarily depart the United States **at his own expense** in deciding whether to exercise his discretion and grant voluntary departure. The advisal of rights and inquiry into whether Defendant had the seven dollars to pay his way to Mexico were an adequate and accurate exercise of the immigration judge's discretion. Because Defendant was properly advised of relief available to him, his deportation proceeding did not violate his due process rights.

An alien shows apparent eligibility for § 240B(a) voluntary departure if there "is no evidence in the record that the alien has been convicted of an aggravated felony under section 101(a)(43) of the Act or that the alien has been charged with deportability under section 237(a)(4) of the Act." In re Cordova, 22 I. & N. Dec. 966, 971 (1999).

Here, the immigration judge advised Defendant that his prior felony conviction in 2004 for carrying a loaded firearm with a prior felony conviction, in violation of California Penal Code §§ 12031(a)(1) and (a)(2)(A), that "[w]hile that certainly is a serious offense, it **may** not be a crime involving moral turpitude." [Def. Ex. B at 12.] There was no contention by the immigration judge or the Government attorney in the transcript of the deportation hearing that Defendant suffered either of these bars to fast track relief. Thus, in informing Defendant of the potential for voluntary departure, the immigration judge was clearly informing him of the form of voluntary departure for which he was apparently eligible – voluntary departure under INA § 240B(a).[1]

Even if the immigration judge imposed a condition – that the alien show he has means to depart the country voluntarily – that the administrative regulation governing the operation of fast track voluntary departure provides is not necessary for this form of relief (see 8 C.F.R. § 1240.26(a)), the immigration judge's mistake does not amount to a due process violation and does not render the deportation order invalid. At the most, it gave Defendant a ground for appeal the immigration judge's decision, which he could have done. See INA § 240B(f)(prohibiting judicial review of denial of request for voluntary departure only under 240B(b).) However, Defendant waived his right to appeal the immigration judge's conclusion that he was ineligible for voluntary departure. Because Defendant was properly advised of relief available to him, his deportation hearing did not violate his due process rights.

***(2) Defendant's Does Not Demonstrate Prejudice***

Even if there were a violation of Defendant's due process rights at the 2005 proceeding, which there was not, Defendant has not demonstrated that he was prejudiced thereby.

In order to show eligibility for voluntary departure under INA § 240B, Defendant must show that he requested such relief prior to or at the master calendar hearing at which his case is initially calendared, made no additional requests for relief, conceded removability, waived appeal of all issues, and had not been convicted of an aggravated felony and was not deportable as a security or terrorist threat. 8 C.F.R. § 1240.26 (a). Defendant must also show that the immigration judge would have exercised discretion to grant him relief. Defendant cannot meet his burden.

---

[1] Where ambiguous, a judge should be presumed to know the law, and his statements should be read to be consistent with the law. See, e.g., United States v. Cataldo, 171 F.3d 1316, 1319 n.6 (11th Cir. 1999)

Defendant's bare assertion that he would have been granted voluntary departure is not sufficient to demonstrate prejudice. To establish prejudice, a defendant must show "plausible grounds for relief." United States v. Jimenez-Marmolejo, 104 F.3d 1083, 1086 (9th Cir. 1996). Put differently, he "must show that 'a direct appeal could . . . have yielded a different result.'" United States v. Corrales-Beltran, 192 F.3d 1311, 1318 (9th Cir. 1999). Mere eligibility for relief, i.e., a demonstration that relief is statutorily possible – does not demonstrate that relief from deportation is "plausible." See, e.g., United States v. Acre-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998) (finding that although alien was eligible for "hardship waiver" under § 1182(h), showing of alien's wife's poor health and difficulty finding a job in Mexico was inadequate to show that such relief was "plausible"). Moreover, "Immigration Judges 'are not expected to be clairvoyant; the record before them must fairly raise the issue." United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001) (citation omitted).

Here, Defendant asks this Court to require that the immigration judge have been "clairvoyant" and divined facts not before him or even before this Court. He offers no affidavit or other affirmative evidence to support the fact that he was not required to show he had the seven dollars to pay his way back to Mexico. In fact, the immigration judge afforded Defendant an opportunity to postpone the proceeding to further investigate Defendant's eligibility for alternative relief to deportation. Defendant rejected the offer and told the immigration judge he did not want to postpone the hearing nor have the Government attorney investigate his alleged visa petition. Also, Defendant could have postponed the proceeding and contacted one of several family members who are legal permanent residents – his father, mother, sister, uncles, cousins – to assist him with the seven dollar bus fare to Mexico. Defendant did not make this request. Finally, Defendant did not offer any alternatives to attempt to gather the cost of the bus ticket to Mexico. No evidence on any of these matters was before the immigration judge or provided to this Court. See United States v. Muro-Inclan, 249 F.3d at 1186 (defendant failed to establish a plausible ground for relief from deportation due to lack of "well-documented" proof). As such, Defendant cannot demonstrate prejudice.

Even if with Defendant's ties to the United States, such a showing would not necessarily suffice to demonstrate plausible, not just possible, relief from deportation. See e.g., In re Eloy Arguelles-Campos, 22 I&N Dec. 811 Interim Decision (BIA 1999) (weighing factors that alien had two U.S.

citizen children, volunteered at his church, and had no criminal convictions, against evidence that alien worked without authorization and had returned after being granted voluntary departure five times in declining to exercise discretion). Here, the facts before the immigration judge were that Defendant had entered and remained in the United States illegally.

Defendant has not met his burden to show a due process violation, much less prejudice stemming from any such violation. His motion should be denied.

Even if he can show that his equities may have warranted exercise of discretion, he cannot ultimately show prejudice. This is because, even assuming that Defendant should have been granted voluntary departure from the United States in 2005, Defendant was not entitled to subsequently return illegally to the country and commit additional crimes. His prior misdemeanor and felony convictions, and subsequent administrative removal, precluded any relief from deportation.

### 2. Defendant's Removal in 2005 Supports the Deportation Element

An administrative removal supports a § 1326 conviction. Section 1326 provides, in part:

> any alien who - -
>
> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States shall be fined . . . or imprisoned . . . or both.

8 U.S.C. § 1326(a). The Ninth Circuit has upheld the government's use of administrative removals to prove the element of a § 1326 offense. See, e.g., United States v. Garcia-Martinez, 228 F.3d 956 (9th Cir. 2000). In Garcia-Martinez, the defendant challenged the government's reliance on a removal order resulting from the immigration service's administrative removal procedure in a 1326 prosecution. The Ninth Circuit concluded that it was not a violation of due process for Garcia-Martinez to have been ordered removed by an immigration officer, and, in any case, he could not establish prejudice because he had suffered an aggravated felony conviction rendering him deportable. Id. at 960-64. See also, e.g., United States v. Hernandez-Vermudez, 356 F.3d 1011, 1013 (9th Cir. 2004) (upholding agency's application of administrative removal procedure to aliens who entered without inspection and holding that defendant's deportation pursuant to a administrative removal order formed the proper basis for a 1326 charge, requiring reversal of dismissal of indictment).

Here, whether Defendant's prior felony conviction in 2004 for carrying a loaded firearm with a prior felony conviction qualifies as an aggravated felony, as defined in section INA § 101(a)(43) has nothing to do with the immigration judge's advisal of rights and exercise of discretionary relief because, as the transcript of the hearing provides, the immigration judge did not advise Defendant that he was subject to removal from the United States under INA § 212(a)(2)(A)(i)(I), which requires that Defendant admit the essential elements of a crime of moral turpitude. In fact, the immigration judge stated that Defendant's conviction under California Penal Code § 12031 was a serious offense, but it **may** not be a crime involving moral turpitude. Defendant's argument that his prior conviction does not bar voluntary departure is not in alignment with the immigration judge's findings. The immigration judge did not advise Defendant that he was ineligible for voluntary departure because of any of his prior convictions. As such, Defendant's argument as to whether he was or was not convicted of a prior aggravated felony sheds little, if any, light on the validity of the immigration judge's advisal of rights, his exercise of discretion in denying a voluntary departure, and issuing an order of deportation.[2]

Because Defendant's deportation was a foregone conclusion, Defendant had no plausible basis for relief and thus cannot collaterally challenge the 2005 removal order. Defendant's removal order in 2005 supports the deportation element in this § 1326 prosecution and his motion to dismiss should be denied.

/ /

/ /

/ /

/ /

/ /

---

[2] It is the United States' contention that Defendant's 2004 felony conviction for carrying a loaded firearm with a prior felony conviction, in violation of California Penal Code §§ 12031(a)(1) and (a)(2)(A) is an aggravated felony under INA § 101(a)(43) as it is analogous to being a felon in possession of a firearm, in violation of California Penal Code § 12021, and that the reasoning in United States v. Castillo-Rivera, 244 F.3d 1020 (9th Cir. 2001) supports this finding. While Defendant argues that the prosecutor is alone in this contention, Defendant fails to cite to any authority supporting his position that section 12031 is not an aggravated felony. [Def. Motion at 8-17.] The United States also disagrees that the Court should not employ the modified categorical approach, in Taylor v. United States, 495 U.S. 575 (1990), to determine whether section 12031 qualifies as an aggravated felony. Defendant makes this assertion because he has received his plea colloquy from 2004 where he admitted to all of the elements of 12031: (1) carrying a loaded firearm; (2) knowing he was carrying the firearm; (3) at the time he carried the loaded firearm he was in a vehicle, which was in a public place or on a public street; and (4) after having suffered a prior felony conviction.

**B. THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO ALLEGED IMPROPER GRAND JURY INSTRUCTIONS**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [See Def. Motion, Docket #18 (addressing instructions on probable cause and exculpatory evidence, as well as comments during *voir dire* of the grand jury panel).] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed. Defendant's contention is contrary to Ninth Circuit precedent, and contrary to findings recently made by District Judge Barry T. Moskowitz on these same issues. [See Ex. A to this Response in Opposition (attaching the Order Denying Defendant's Motion to Dismiss Indictment in United States v. Martinez-Covarrubias, 07CR0491 (S.D. Cal. Oct. 11, 2007).] For these reasons, Defendant's motion to dismiss the Indictment should be denied.[3]

**VI**

**CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's motion to dismiss the indictment due to an alleged invalid deportation and due to alleged improper grand jury instructions.

Dated: April 29, 2008.

Respectfully submitted,
KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

[3] The United States contends that this motion lacks merit. However, if the Court considers otherwise, the Unite States would request the Court grant leave for the United States to file more expansive briefing on this issue.