**GREGORY T. MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: gregory_murphy@fd.org

Attorneys for Eduardo Martinez-Valdez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE M. JAMES LORENZ)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO MARTINEZ-VALDEZ,<br><br>Defendant. | ) | Case No. 07CR3401-L<br><br>DATE: May 6. 2008<br>TIME: 10:00 a.m.<br><br>REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO MR. MARTINEZ-VALDEZ'S MOTION TO DISMISS THE INDICTMENT DUE TO AN INVALID DEPORTATION |

Eduardo Martinez-Valdez, through undersigned counsel Gregory T. Murphy and Federal Defenders of San Diego, Inc., submits this reply to the prosecutor's Response in Opposition to Mr. Martinez-Valdez's Motion to Dismiss the Indictment due to an Invalid Deportation.

**I.**

**DISCUSSION**

**A. The Immigration Judge Did Not "Thoroughly Consider" Whether Mr. Martinez-Valdez Should Receive Voluntary Departure.**

The prosecutor asserts repeatedly that the IJ "thoroughly considered" Mr. Martinez-Valdez for voluntary departure, then exercised his discretion "to conclude that one was not warranted." Government's Response ("GR") at 4, 5, 7. Mr. Martinez-Valdez is confident the Court's independent review of the transcript will reveal otherwise.

/ / /

The Immigration Judge told the assembled pro se respondents: "If you are eligible for voluntary departure, I will ask you if you have the amount of money to pay your own way back to your own country."[1] He then stated:

> If you do, I will ask the government attorney their position... If the government attorney is not opposed to voluntary departure being granted, I will grant it today... If the government attorney tells me that he is opposed to voluntary departure being granted...then it will be your decision if you want your case postponed for a voluntary departure hearing. I cannot do the hearing today, but I will do it as soon as possible...At your postponed hearing, I would look at all the positive information you would present, and weigh it against the negative information the government presents.

Def. Ex. B at 9.

Later in the proceeding, the immigration judge addressed Mr. Martinez-Valdez. Id. at 13. He asked him if he had the seven dollars to return to Mexico. Id. Mr. Martinez-Valdez indicated he did not. Id. Although the IJ then considered whether Mr. Martinez-Valdez qualified for other relief, the Judge never again mentioned voluntary departure relief. He did not ask the government's position. He did not ask Mr. Martinez-Valdez if he wished a hearing on voluntary departure. He did not check the box on his order indicating that "the respondent's application for voluntary departure was denied." Def. Ex. C.

The prosecutor seems to suggest that the Immigration Judge was so concerned that respondents pay their own way back to Mexico that he would not--under any circumstances--exercise his discretion to grant voluntary departure to anybody who did not have seven dollars at the moment of their first calendar hearing, regardless of the government's position and regardless of any positive information that might be adduced at a later hearing. Accordingly, the argument goes, the IJ "exercised his discretion" to deny voluntary departure on this one basis alone, without mentioning that he was doing so and without noting it on his order.

This argument fails. First, the record plainly belies the contention that the IJ considered Mr. Martinez-Valdez for voluntary departure after learning he did not then have seven dollars. The IJ did not ask the government's position or permit Mr. Martinez-Valdez to request a hearing. He never again mentioned voluntary departure. He did not note his alleged denial on his order. There is simply no support in the

/ / /

---

[1]The reference to eligibility presumably meant the respondent had not been convicted of an aggravated felony. Although Mr. Martinez-Valdez has argued that an aggravated felony would not bar voluntary departure, the Immigration Judge would not be empowered to ignore the regulations imposing this restriction on his eligibility.

transcript for the government's assertion that the IJ balanced factors and decided to deny relief in the exercise of discretion.

Second, even if the prosecutor were correct that the IJ made the present ability to return a threshold requirement for discretionary relief, imposing that prerequisite would amount to requiring the respondent to show "that the alien has the means to depart and intends to do so." 8 U.S.C. § 1229c(b)(1)(D) (addressing **post-conclusion** voluntary departure). That factor, however, is specifically omitted from 8 U.S.C. § 1229c(a) (describing **fast-track** voluntary departure"). Accordingly, the IJ commits error by considering the present ability to pay, much less making it the single determinative factor. Cf. United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006) (Because supervised release statute incorporates some §3553(a) factors but not others, district judge errs by considering the omitted factors).

**B. Mr. Martinez-Valdez is Exempt from the Exhaustion Requirement.**

The prosecutor argues that Mr. Martinez-Valdez--a 20 year old pro se respondent with limited English--should have argued on appeal that the immigration judge employed an incorrect standard for considering him for voluntary departure. GR, p6. In the prosecutor's opinion, Mr. Martinez-Valdez's failure to pursue this remedy dooms the present motion.

The prosecutor again is mistaken. As noted in Mr. Martinez-Valdez's motion, it is well established that an immigration judge's misadvisal of the law excuses the respondent's failure to appeal. E.g. Moran-Enriquez v. INS, 884 F.2d 420, 423 (9th Cir. 1989) (where record, fairly reviewed by a person intimately familiar with the immigration laws raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility, if the petitioner is not advised of this possibility, the appellate waiver is invalid.). Indeed, this is the only rule that makes sense. Immigration Court is an administrative proceeding without the safeguards that attend criminal proceedings. A typical respondent in immigration court appears without counsel and therefore relies on the immigration judge's interpretation of the immigration laws. The respondent, like Mr. Martinez-Valdez, may be detained and may not read English. To interpret due process to require the pro se respondent to independently double check the IJ's analysis reflects a unacceptably dim view of that constitutional protection.[2]

---

[2]The prosecutor also avers that "even if the immigration judge imposed a condition...that the administrative regulation government the operation of fast track voluntary departure provides

**C. Because Mr. Martinez-Valdez Has Established His Prima Facie Eligibility for Relief, the Government Bears the Burden of Showing the Procedural Error Could Not Have Effected the Proceeding's Outcome.**

The prosecutor complains that Mr. Martinez-Valdez "offers no affidavit or other affirmative evidence to support the fact that he was not required to show he had the seven dollars to pay his way back to Mexico." The prosecutor's concern is misplaced. In lieu of an "affidavit or other affirmative evidence," Mr. Martinez-Valdez offers the statute: 8 U.S.C. 1229c(a); the regulation; 8 C.F.R. § 1240.26(a); and case authority: In re Eloy Arguelles-Campos, 22 I. & N. Dec. 811, 817 (BIA, June 07, 1999)("**under section 240B(a)**, [addressing pre-conclusion voluntary departure] **an alien need not show** that he has good moral character or that **he has the financial means to depart the United States**.") (emphasis added).

More fundamentally, the prosecutor misunderstands the government's burden. It is well established that "[o]nce [the defendant] makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir.2003). This means that when Mr. Martinez-Valdez establishes his prima-facie eligibility, the prosecutor must show that no Immigration Judge would have granted voluntary departure in the exercise of discretion. In United States v. Ortiz-Lopez, 385 F.3d 1202, 1205 (9th Cir. 2004), for example, the government argued the defendant was ineligible for voluntary departure because the defendant had been convicted of an aggravated felony or, in the alternative, that no Immigration Judge would have granted voluntary departure in the exercise of discretion. After concluding the defendant qualified for voluntary departure, the Ninth Circuit remanded to permit the government to present evidence showing "that no IJ would have allowed [the defendant] to depart voluntarily as a discretionary matter under § 1229c(a), regardless of whether his cocaine possession conviction was an aggravated felony." Id. See also

---

is not necessary for this form of relief, the immigration judge's mistake does not amount to a due process violation.... At most, it gave Defendant a ground for appeal." In immigration Court, however, where respondents are not afforded counsel, the immigration judge is responsible for safeguarding their due process rights. See 8 C.F.R. § 1240.11(a)(2) (2006) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing."). It is well established, therefore, that erroneous legal advice by an immigration judge violates the respondent's due process rights. E.g. United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 n.2 (9th Cir. 2004) (A person eligible for relief from removal who is mis-advised by an IJ that he is not eligible for relief is "exempted from the exhaustion requirement" of § 1326(d)).

United States v. Nungaray-Ruvalcaba, 2289 Fed.Appx 436 (9th Cir. 2007) (unpublished)(Reversing conviction after trial because "Immigration Judges have broad authority to grant [pre-hearing] voluntary departure" and "the Government [did] not argue that it could rebut Nungaray's prima facie showing of prejudice.")

Mr. Martinez-Valdez is in exactly the same situation. Because there is no real question that he satisfies all the requirements for "fast-track" voluntary departure, it falls upon the government to show that "no IJ would have granted voluntary departure." As the prosecutor has introduced no affidavits or affirmative evidence on this point, he cannot meet his burden.

**D. Mr. Martinez-Valdez Does Not Need to Show He Was Entitled to Return to the United States.**

The prosecutor asserts that "even if [Mr. Martinez-Valdez] can show that his equities may have warranted the exercise of discretion, he cannot ultimately show prejudice. This is because, even assuming that Defendant should have been granted voluntary departure from the United States in 2005, Defendant was not entitled to subsequently return illegally to the United States and commit additional crimes." GR p. 12.

This argument misses the mark. The issue here is whether the government may use a flawed civil proceeding to establish an element of the instant prosecution. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."). Mr. Martinez-Valdez does not need to show he is or was entitled to return to the United States.

**E. Mr. Martinez-Valdez Has Never Been Subject to an "Administrative Removal"**

Mr. Martinez-Valdez was ordered removed by an Immigration Judge. Notwithstanding the discussion in the Government's Response in Opposition, GR 12-13, there has been no "administrative removal" in this case.

**II.**

**CONCLUSION**

By requiring him to show the present ability to pay for his own return to Mexico, Mr. Martinez-Valdez's Immigration Judge made a simple error of law with portentous consequences for Mr. Martinez-

Valdez. This simple mistake prevented him from being considered for relief for which Mr. Martinez-Valdez was plainly eligible, relief that might have permitted his lawful reentry to the United States. It also prevents the prosecutor from using this flawed proceeding in a subsequent criminal prosecution. Mr. Martinez-Valdez therefore asks the Court to order the indictment against him dismissed.

Respectfully submitted,

DATED: May 5, 2008

/s/ Gregory T. Murphy

**GREGORY T. MURPHY**
Federal Defenders of San Diego, Inc.
Attorneys for Eduardo Martinez-Valdez