KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO MARTINEZ-VALDEZ,<br><br>Defendant. | Criminal Case No. 07CR3401-L<br><br>Date: May 20, 2008<br>Time: 9:00 a.m.<br><br>The Honorable M. James Lorenz<br><br>**THE UNITED STATES' TRIAL MEMORANDUM** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, and respectfully submits the following Trial Memorandum.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## I

## STATEMENT OF THE CASE

**A. INDICTMENT**

On December 19, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging EDUARDO MARTINEZ-VALDEZ ("Defendant") with being a deported alien found in the United States, in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment further alleges that Defendant had been removed from the United States subsequent to January 22, 2004.

**B. TRIAL STATUS**

Trial is scheduled for May 20, 2008 at 9:00 a.m., before the Honorable M. James Lorenz. The United States estimates that its case-in-chief will last approximately one to two days.

**C. DEFENSE COUNSEL**

Defendant is represented by appointed counsel, Gregory Murphy of Federal Defenders of San Diego, Inc.

**D. DEFENDANT'S CUSTODY STATUS**

Defendant is in custody.

**E. INTERPRETER**

The United States does not require the assistance of an interpreter for any of its witnesses, but Defendant may require an interpreter.

**F. JURY WAIVER**

Defendant has not waived trial by jury.

**G. PRE-TRIAL MOTIONS AND MOTIONS IN LIMINE**

On January 3, 2008, Defendant filed motions for discovery and leave to file additional motions. On February 7, 2008, the United States filed its amended motions for fingerprint exemplars, reciprocal discovery and leave to file further motions.

On April 22, 2008, Defendant filed motions to dismiss the Indictment due to an invalid deportation and due to improper grand jury instructions. On that same date, Defendant also filed his motions in limine to: (1) preclude the certificate of nonexistence of record; (2) preclude evidence under

Federal Rules of Evidence 404(b) and 609; (3) preclude expert testimony; (4) preclude admission of documents not produced in discovery; (5) preclude the A-File Custodian from testifying about immigration proceedings; (6) exclude A-File custodian; (7) prohibit witnesses from referring to Defendant as the alien; and (8) preclude sending the indictment into the jury room during deliberations.

On April 22, 2008, the United States filed its motions in limine to: (1) preclude all witnesses except the case agent; (2) admit A-File documents and testimony; (3) admit certificate of nonexistence; (4) admit audiotape and transcript of Defendant's deportation hearing; (5) admit expert testimony; (6) admit evidence under Federal Rules of Evidence 404(b) and 609; (7) prohibit collateral attack of Defendant's deportation; (8) prohibit reference to why Defendant reentered the United States; (9) prohibit reference to prior residency; (10) preclude expert testimony by defense; (11) prohibit reference to punishment; (12) preclude argument regarding warning; (13) preclude argument regarding duress and necessity; (14) preclude self-serving hearsay; and (15) renewed motion for reciprocal discovery.

The Court held a motions hearing on May 6, 2008. At the hearing, the Court **granted** the following motions in limine to: (1) prohibit reference to punishment; (2) preclude argument regarding warning; (3) preclude argument regarding duress and necessity; (4) preclude self-serving hearsay; (5) renewed motion for reciprocal discovery; (5) grant leave to file further motions; (6) take fingerprint exemplars; (7) preclude documents not produced in discovery; (8) prohibit witnesses from referring to Defendant as "the alien;" (9) preclude sending the indictment into the jury room during deliberations; (10) exclude witnesses except case agent; (11) admit documents from A-File and Certificate of Non-existence; (12) admit audiotape and transcript of deportation hearing; (13) prohibit collateral attack of deportation; (14) prohibit reference to why Defendant reentered the United States; (15) prohibit reference to prior residency; (16) prohibit reference to document destruction; and (17) preclude expert testimony by defense. The Court granted in part and denied in part the following motions in limine to: (1) preclude the A-File custodian from testifying about the immigration proceedings; (2) exclude the A-File custodian; and (3) admit testimony. The Court **denied** the following motions and motions in limine to: (1) preclude the Certificate of Non-existence of Record; and (2) dismiss the indictment due to improper grand jury instructions. The Court found as moot the following motions in limine to: (1)

preclude evidence under Federal Rule of Evidence 404(b); and (2) admit evidence under Federal Rule of Evidence 404(b). The Court reserved ruling on the following motions and motions in limine to: (1) preclude evidence under Federal Rule of Evidence 609; (2) admit evidence under Federal Rule of Evidence Rule 609; and (3) dismiss the indictment due to an invalid deportation.

On May 14, 2008, the Court issued a written order **denying** Defendant's motion to dismiss the indictment due to an invalid deportation.

### H. STIPULATIONS

The United States and Defendant have entered into a fingerprint stipulation that the fingerprints taken by Defendant on October 10, 2007 by Immigration and Customs Deportation Officers were in fact fingerprints belonging to Defendant. These fingerprints were relied upon by the United States' fingerprint expert and form the basis of his expert testimony.

As of the date of this trial memorandum, the parties have not entered into any other stipulations.

### I. DISCOVERY

The United States has complied with its discovery obligations. Defendant has not provided reciprocal discovery.

## II

## STATEMENT OF FACTS

### A. INSTANT OFFENSE – ILLEGAL REENTRY (FOUND IN)

#### 1. Apprehension and Parole Violation Confirmation

On April 23, 2007, at approximately 11:20 a.m., Border Patrol Agents were conducting operations east of Tocayo and south of Interstate 5 near Dairy Mart Road in San Diego, California. Border Patrol Agent Casillas encountered Defendant near an area known as "Five Fingers," which is part of an area known as "East Smugglers" and just north of the U.S.-Mexico international border. Agent Casillas approached Defendant, identified himself as a Border Patrol Agent, and performed a field interview. Defendant, freely identified himself as "Eduardo Martinez-Valdez," and admitted that he was a citizen and national of Mexico. Defendant also freely admitted that he did not possess documentation that would allow him to legally enter or remain in the United States. Defendant was arrested and transported to the Imperial Beach Border Patrol Station for processing.

While processing Defendant, Border Patrol Agent Martinez was able to verify that Defendant had a parole hold on him. Consequently, Defendant was turned over to state authorities for a violation of parole under California Penal Code Section 3056.

**2. Immigration Check**

In July 2007, the state prison notified Immigration and Customs Enforcement ("ICE") that Defendant was an illegal alien serving time for a parole violation. On July 27, 2007, ICE Deportation Officer Barrios went to Donovan State Prison in San Diego, California, in order to obtain Defendant's sworn statement for the purposes of his administrative removal proceedings that would follow his release from state prison. Officer Barrios obtained a sworn, written statement from Defendant, who admitted his alienage (Mexico), that he was previously deported, that he did not obtain permission to return to the United States after his last deportation, and that he recently reentered the United States on April 23, 2007, near the San Ysidro, California, Port of Entry.

**3. Transfer to ICE Custody**

Defendant served approximately eight months in state prison for the parole violation. Shortly before Defendant's release from prison, ICE received approval to proceed with a federal prosecution and lodged a detainer against Defendant. On October 10, 2007, Defendant was released from state prison and transferred to ICE pursuant to that detainer. ICE Deportation Officer Harrison performed a detailed records check on Defendant, which revealed that Defendant is a citizen and national of Mexico, and that Defendant had been previously deported from the United States.

**4. Advice of Rights**

On October 10, 2007, at approximately 10:20 a.m., ICE agents advised Defendant of his Miranda rights. Defendant elected to invoke his rights.

**B. DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered deported by Immigration Judge Sean H. Keenan on January 19, 2005. Defendant was physically removed from the United States pursuant to the deportation order on that same day through the pedestrian lanes at the Nogales, Arizona, Port of Entry. After Defendant's last deportation, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

**C. DEFENDANT'S CRIMINAL HISTORY**

Defendant has an extensive criminal history, and the United States propounds that Defendant has thirteen criminal history points placing him in Criminal History Category VI.

On February 20, 2002, Defendant was convicted of misdemeanor vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 90 days in jail and 3 years' probation.

On July 11, 2002, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 180 days in jail and 4 years' probation. On September 30, 2004, Defendant received an additional 8 months' custody for violating his probation, relating to his conviction for felony vehicle theft. As such, Defendant received a total sentence of approximately 14 months' custody for this conviction.

On February 6, 2003, Defendant was convicted of felony vehicle theft, in violation of California Vehicle Code § 10851(a), and received a sentence of 300 days in jail and 5 years' probation.

On January 22, 2004, Defendant was convicted of a felony for carrying a loaded firearm with a prior felony conviction, in violation of California Penal Code §§ 12031(a)(1) and (a)(2)(A), and received a sentence of 2 years in prison. On or about May 8, 2007, Defendant's parole was revoked in the case involving his prior felony conviction for California Penal Code § 12031. The court sentenced Defendant to 8 months in prison. On October 10, 2007, Defendant was released from state prison.

## III

## PERTINENT LAW

**A. ELEMENTS OF 8 U.S.C. §1326**

The United States must prove each of the following elements beyond a reasonable doubt:

1. Defendant was deported from the United States;
2. After deportation, Defendant voluntarily entered the United States;
3. When Defendant entered he knew he was entering the United States or after the defendant entered the United States he knew that he was in the United States and knowingly remained;
4. Defendant was found in the United States without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and
5. Defendant was an alien at the time of the defendant's entry into the United States.

See 9th Cir. Model Crim. Jury Instructions 9.5B (2007); see also United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir. 2006).[1/] An alien is a person who is not a natural-born or naturalized citizen or a national of the United States.

**IV**

**WITNESS LIST**

The United States reserves the right to add, omit, substitute, or change the order of witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1. John Casillas, United States Border Patrol Agent
2. Hugo Buenrostro, United States Border Patrol Agent
3. Martin Martinez, United States Border Patrol Agent
4. Lisette Guzman, Immigration and Customs Deportation Officer (A-File Custodian)
5. Christopher Galvez, Immigration and Customs Deportation Officer
6. Jose Barrios, Immigration and Customs Deportation Officer
7. Gregory Harrison, Immigration and Customs Deportation Officer
8. David Beers, Fingerprint Expert

**V**

**EXHIBIT LIST**

The United States will provide a complete exhibit list prior to trial. The United States requests that Defendant examine the United States' exhibits before trial to expedite the proceedings. The United States further requests an opportunity to examine Defendant's exhibits before trial. Presently, the United States intends to offer into evidence the following exhibits:

1. Photographs/maps of the Apprehension Area
2. Fingerprint Card, dated October 10, 2007
3. Stipulation by Parties as to Fingerprints on Fingerprint Card, dated October 10, 2007
4. Audiotape and Transcript of Immigration Hearing held on January 19, 2005
5. Order of the Immigration Judge Sean H. Keenan, dated January 19, 2005

---

[1] The United States will request a special verdict form indicating that the Defendant was removed subsequent to January 22, 2004. See United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).

6. Warrant of Removal (Form I-205), dated January 19, 2005

7. Certificate of Non-Existence of Record, dated April 8, 2008

8. Record of Sworn Statement, dated July 27, 2007

## VI

## OTHER LEGAL ISSUES

### A. INTENT

To convict a defendant pursuant to a Section 1326 "found in" offense, the United States must prove beyond a reasonable doubt that the defendant entered voluntarily and had knowledge he was committing the underlying act that made his conduct illegal – entering or remaining in the United States. United States v. Salazar-Gonzalez, 458 F.3d 851, 856 (9th Cir. 2006). The general intent of a defendant to reenter the United States may be inferred, however, from the fact that the defendant was previously deported and subsequently found in the United States. United States v. Rivera-Sillas, 417 F.3d 1014, 1021 (9th Cir. 2005), cert. denied, 126 S. Ct. 1094 (2006). A defendant found in the United States is presumed to have entered willfully and knowingly where he has not raised any evidence to the contrary. Id. at 1020-21.

### B. "OFFICIAL RESTRAINT"

The United States must prove that the defendant was found in the United States free from official restraint. See United States v. Ruiz-Lopez, 234 F.3d 445, 448 (9th Cir. 2000) (citing United States v. Pacheco-Medina, 212 F.3d 1162, 1166 (9th Cir. 2000)). Nonetheless, where there is no evidence that government officials constantly or continuously surveilled an alien from the moment of entry, the unexplained presence of an alien some distance from the border is sufficient to establish that the alien entered voluntarily. United States v. Hernandez-Herrera, 273 F.3d 1213, 1219 (9th Cir. 2001); United States v. Quintana-Torres, 224 F.3d 1157, 1159 (9th Cir. 2000).

### C. ALIENAGE

The Ninth Circuit has held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001). The Ninth Circuit also has described the type of documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior deportation order, admissions Ramirez-Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior deportation order, the defendant's admissions to an INS agent that he was a Mexican citizen, and his admissions during the deportation hearing that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior deportation order, the deportation hearing transcript, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has also affirmed the admission of Orders to Show Cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's §1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the deportation hearing, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the order to show cause and an advisement of rights form, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

Sotelo, 109 F.3d at 1449 (emphasis added).

## D. PRIOR DEPORTATION

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under §1326 and should not be presented to the jury. See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). The United States need only prove that a deportation proceeding actually occurred and that the defendant was consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

A deportation order or warrant is sufficient to establish the prior deportation. Id.; see also United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is admissible as a Public Record, pursuant to Federal Rules of Evidence 803(8)). A tape recording or

transcript of the prior deportation is not required to prove the prior deportation. Medina, 236 F.3d at 1030-31.

Although a defendant charged pursuant to § 1326 can preclude the Government from relying on a prior deportation in which the proceedings were so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape recording or transcript of the deportation proceeding does not establish that the deportation was "fundamentally unfair." See id. at 1031-32 (citations omitted). Finally, because the defendant must also prove prejudice as a result of a flawed deportation proceeding, a vague assertion that he might be able to locate some defect in the proceeding if a tape recording was available is "no more than speculation to support his assertion of prejudice," and insufficient to meet his burden. Id. at 1032 (quoting United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999)).

**E. PHYSICAL REMOVAL**

The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003) (holding that §1326 speaks only of "removal" and that the statute "plainly turns on the alien's physical removal -- not the order of removal"). Thus, the United States need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005).

**F. EXPRESS CONSENT**

The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. §212.2. These regulations include the requirement that a deported alien must have remained outside of the United States for a minimum of five consecutive years. Id. §212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. [Citations omitted.] Accordingly, the Attorney General did not "expressly consent[ ] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. §1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). As in Pina-Jaime, there is no

evidence in this case that Defendant has properly sought or actually obtained permission to enter the United States. As a result, any cross-examination regarding the lack of permission is irrelevant. United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), is instructive in that regard. In Rodriguez-Rodriguez, the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id. Here, as in Rodriguez, Defendant has not presented any evidence that he properly applied for reentry.

**G. EXPERT TESTIMONY**

The United States intends to call as a witness a fingerprint expert, David Beers, for the purpose of identifying Defendant as the person who was previously deported. Such expert testimony should be admitted to assist the jury in understanding that this Defendant is an alien who was found in the United States after having been deported. See Federal Rule of Evidence 702; United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The United States has provided written notice of its intention to use expert testimony. This notice also included a written summary of testimony the United States intends to use pursuant to Federal Rules of Evidence 702, 703, and 705, during the trial in the above-referenced criminal matter. Accordingly, such evidence is proper and should be admitted.

**H. A-FILE DOCUMENTS AND WITNESS**

The United States intends to offer documents from the “A-File” maintained by the Department of Homeland Security and its predecessors that corresponds to Defendant's name in order to establish Defendant's alienage, prior deportations, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are

self-authenticating "public records," or, alternatively, "business records." See Fed. R. Evid. 803(8)(B) and 803(6). The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his §1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola-Dominguez argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court noted that documents from a defendant's immigration file, although "made by law enforcement agents . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

While Loyola-Dominguez constitutes a fairly recent restatement of the rules governing public and business records, courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a §1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (confirming district court's decision to admit certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (affirming admission of warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d 533, 535 (9th Cir. 1980) (holding that district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (finding that district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records and noting that such documents would also be admissible as public records).

The United States intends to call Immigration and Customs Enforcement Deportation Officer Lisette Guzman in its case in chief. Although Officer Guzman will not give expert opinions based upon specialized knowledge, she will testify regarding documents contained in Defendant's A-File. See Fed.

R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (finding, with regard to testimony in a drug case, that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (affirming testimony of agent who "served as the conduit through which the government introduced documents from INS' Alien Registry File"). Here, Officer Guzman will testify regarding the purpose of the A-File, the types of documents maintained in the A-File, and based on her personal experience, she will explain how the documents and how the documents fit within the immigration process. Officer Guzman will also testify as to her familiarity with regard to the deportation and removal process. Officer Guzman will testify about the results of database searches that she personally conducted to determine whether Defendant applied for or obtained authorization from the Attorney General of the United States to enter into the United States. As the United States indicated in its motions in limine, such testimony is proper in a § 1326 case.

**I. DUPLICATES**

A duplicate is admissible to the same extent as an original unless: (1) a genuine question is raised as to the authenticity of the original; or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. See Fed.R.Evid. 1003.

**J. 609 EVIDENCE**

The United States intends to use Defendant's felony convictions as impeachment evidence pursuant to Federal Rule of Evidence 609. It is the United States' position that if Defendant takes the stand, he would do so to dispute at least one of the elements of the charges brought against him, and therefore, his credibility would be at issue. In addition, evidence of the convictions would be relevant to refute any claim that Defendant was not subject to deportation.

**K. RECORD OF SWORN STATEMENT**

Defendant may challenge the admission of his Record of Sworn Statement that was taken by Deportation Officer Barrios on July 27, 2007. While Defendant was in state prison serving a term for parole violation, Officer Barrios conducted an interview at Donovan State Prison, and did not precede the interview by advising Defendant of his Miranda rights. The only case that has specifically addressed

whether statements made by an illegal alien while incarcerated serving time for criminal charges and detained pending removal were admissible, despite lack of Miranda warnings, in subsequent prosecution is Bruce v. United States, 439 F. Supp.2d 364, 370-71 (M.D. Pa. 2006). In Bruce, the ICE agents took the sworn statement of a Nigerian national while he was serving time in prison on bank fraud charges. Id. at 364. The district court held that "[j]ust because [he] was already in prison does not mean that he was in a custodial setting." Id. at 370-71 (citing Burkholder v. Newton, 116 Fed. Appx. 358, 361 (3d Cir.2004)). While Miranda may apply to a defendant who is in custody for an offense unrelated to the interrogation, see Mathis v. United States, 391 U.S. 1, 4-5 (1968), "incarceration does not *ipso facto* render an interrogation custodial." Leviston v. Black, 843 F.2d 302, 303 (8th Cir.1988). In this regard, "[p]risoner interrogation simply does not lend itself easily to analysis under the traditional formulations of the Miranda rule." United States v. Conley, 779 F.2d 970, 973 (4th Cir.1985). The courts examine the totality of the circumstances surrounding the interrogation to ascertain whether the defendant should be deemed "in custody" for purposes of Miranda. See United States v. Menzer, 29 F.3d 1223, 1232 (7th Cir.1994). The Third Circuit, albeit in an unpublished opinion, suggested that the pertinent inquiry is whether there is a "'change in the surroundings of the prisoner which results in an added imposition on his freedom of movement.'" Burkholder v. Newton, 116 Fed. Appx. 358, 361 (3d Cir. 2004) (noting that "[s]uch a change in surroundings could include the imposition of handcuffs or being taken to a locked room to be questioned by correctional officers"). In Pennsylvania v. Muniz, 496 U.S. 582, 601-02, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the Court indicated that routine booking questions "reasonably related to the police's administrative concerns" are not covered by Miranda.

The Ninth Circuit agrees that a Miranda warning does not have to precede the taking of Defendant's statements by immigration officers for purposes of memorializing them in the Record of Sworn Statement. See United States v. Solano-Godines, 120 F.3d 957, 961-62 (9th Cir. 1997) (quoting United States v. Mata-Abundiz, 717 F.2d 1277, 1278-79 (9th Cir. 1983)), cert. denied, 118 S.Ct. 722 (1998); 18 U.S.C. § 3501(a) (requiring the district court to determine whether a "confession" by a defendant was "voluntarily made" before admitting it into evidence). The Statement was not taken by means of an "interrogation" that required a Miranda warning and cannot be found to be involuntary. See Solano-Godines, 120 F.3d at 962; see also Cuevas-Ortega v. INS, 588 F.2d 1274, 1278 (9th Cir.

1979) (in immigration context, "it is more likely than not that the alien will freely answer the government agent's question"). The Statement at most contains "'a series of benign responses to questions" during routine questioning in the course of a civil deportation proceeding, long before the instant criminal proceeding." See United States v. Dominguez-Zamdio, 211 F.3d 1275 (9th Cir. 2000).

The statements in the Record of Sworn Statement are not hearsay and are admissible under Federal Rule of Evidence 801(d)(1)(A) as a party admission. United States v. Dominguez-Zamdio, 211 F.3d 1275 (9th Cir. 2000) (holding that the district court did not err in admitting the Record of Sworn Statement, taken just prior to deportation, into evidence); United States v. Contreras, 63 F.3d 852, 854-55 (9th Cir. 1995) (same). The Record of Sworn Statement constitutes a prior statement under oath by Defendant and bears his signature. See Fed. R. Evid. 801(a) (admission may be offered against a party in either oral or written form).

Here, Defendant was not advised of his Miranda rights prior to Officer Barrios' taking Defendant's sworn statement on July 27, 2007. In looking at the totality of the circumstances, Officer Barrios was performing a duty in preparation for Defendant's administrative removal. At the time Officer Barrios interviewed Defendant, a preliminary decision had been made not to prosecuted Defendant for being a deported alien found in the United States. It was not until Deportation Officer Harrison, in the fall of 2007, presented the case again to the prosecutions unit that it was specially approved for prosecution for a violation of § 1326. As such, Miranda warnings were not required because there had been no additional burden on Defendant's otherwise constrained freedom of movement while in custody, the interview lasted a short period of time (less than thirty minutes), and the information was sought for purposes of administrative removal. It is clear that the statements were not elicited in a custodial setting. Defendant was already incarcerated and the circumstances do not indicate "the type of coercive situation that was the source of concern in Miranda and its progeny. Isaacs v. Head, 300 F.3d 1232, 1267 (11th Cir.2002). Accordingly, the statements made by Defendant, as memorialized in the Record of Sworn Statement, did not require to be preceded by a Miranda warning. The statements are not hearsay and should be admitted.

/ /

/ /

**VII**

**PROPOSED VOIR DIRE**

The United States requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

1. For those of you who have sat on a criminal jury, whose jury did not reach a unanimous verdict?
2. Has anyone gone through a Border Patrol checkpoint or been referred to secondary inspection at a port of entry?
3. Has anyone had any disputes with any agency of the United States Government?
4. Have you, your relatives, or your close friends been investigated, arrested, accused, or charged with a crime?
5. Does anyone believe that the United States Government should not patrol the border it shares with Mexico?
6. Does anyone have strong feelings about Border Patrol, Immigration Customs and Enforcement, or Department of Homeland Security?
7. Have you been following stories in the news about proposed immigration law reform, the activities of the minute men and protests surrounding their activities, or the proposed guest worker program?
8. Has anyone gone through, or helped someone go through, the process of applying for residency or citizenship?
9. Does anyone believe that it should not be illegal to enter the United States without authorization?
10. Does everyone understand that as a juror your duty is to apply the law regardless of whether your disagree with it?
11. Is anyone a member of a group, or have an affiliation with a group, that advocates a position on immigration issues?
12. Does anyone have religious or moral beliefs which will make it difficult for him/her to make a decision strictly based on the law and facts of this case?

The United States respectfully reserves the right to submit additional questions prior to trial.

**VII**

**JURY INSTRUCTIONS**

The United States will provide the Court with a set of proposed instructions under separate cover.

DATED: May 16, 2008.

Respectfully submitted,
KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO MARTINEZ-VALDEZ,<br><br>Defendant. | ) | Criminal Case No. 07CR3401-L<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **United States' Trial Memorandum** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Gregory Murphy
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Tel: (619) 234-8467
Email: gregory.murphy@fd.org
*Lead Attorney for Defendant*

A hard copy will be delivered to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2008.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney